**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **RON MILLER,**             ) | |
|              ) | |
|              ) | |
|       **Plaintiff,**    ) | |
|              ) | |
| **v.**             ) | **NO. 5:22-cv-00208-GFVT-MAS** |
|              ) | |
| **ALCO MANAGEMENT, INC,** *et al.*,   ) | |
|              ) | |
|       **Defendants.**   ) | |
|              ) | |
|              ) | |

**REPORT AND RECOMMENDATION**

Ronald Miller's ("Miller") *pro se* First Amended Complaint [DE 25] alleges ten claims against eleven named defendants that can be parsed into three groups. In the first group are Alco Management, Inc. ("Alco Management"), Alco Fairfax Partners, LLLP ("Alco Partners"), Alco Properties, Inc. ("Alco Properties"), Frank Z. Jemison ("Jemison"), Robert D. Hyde ("Hyde"), Beth Stolts ("Stolts"), and Cindy Gullet ("Gullet") (collectively, "Alco Defendants"), against whom Miller alleges Counts I–VIII. The second group includes the City of Georgetown ("the City") and Georgetown Police Department ("GPD") Detective Lewis Crump ("Detective Crump") (collectively, "Georgetown Defendants"), against whom Miller alleges Counts VIII and IX. Finally, Miller brings a claim against his former neighbor Judy Devers ("Devers"), against whom he alleges Counts VIII and X.

Alco Defendants and Georgetown Defendants filed motions to dismiss the First Amended Complaint.  [DE 29 & 30].  Those motions are fully briefed.  Devers has not filed an Answer or motion in response to the First Amended Complaint, although the record reflects she has been served with a copy of the First Amended Complaint and summons.  [DE 15, PageID# 185 (Summons Returned Ex'd)].  Additionally, Miller filed a Motion for Leave to File a Second Amended Complaint [DE 65] and a  Motion for Leave to File a Sur-reply in support of that motion.  [DE 75].  Finally, and most recently, Miller filed two motions for leave to file supplemental complaints, which the Court construes as additional motions for leave to file an amended complaint.  [DE 77 & 87].

Ultimately, for the reasons that follow, the undersigned recommends that all of Miller's motions be denied and that Alco Defendants and Georgetown Defendants' motions to dismiss be granted.

## I.    BACKGROUND

## A.    RELEVANT FACTS AS ALLEGED IN FIRST AMENDED COMPLAINT[1]

### 1.    Miller's Interactions with Alco Defendants

This action stems from problems that arose during Miller's tenancy at a residential apartment complex, Southern Oaks Apartments ("Southern Oaks").  In August 2018, Miller found Southern Oaks online and visited in-person shortly thereafter, where he noted signage reflecting that the property was non-smoking.

---

[1] The Court utilizes and accepts as true, for purposes of resolving the pending motions, the facts as articulated in Miller's First Amended Complaint.  [DE 25].

2

[DE 25, PageID# 256]. Miller was interested in a non-smoking property because he is disabled and among his disabilities is a respiratory condition aggravated by tobacco smoke. [DE 25, PageID# 260].

On or around October 8, 2018, Miller called Southern Oaks to inquire about the complex's policy regarding smoking. He expressed that he was looking for a non-smoking property that would enforce its policies because he has severe reactions to tobacco smoke. The Southern Oaks employee to whom he spoke explained that the complex was serious about enforcing its non-smoking policy, as demonstrated by the signs around the property and its specific lease provision that prohibits smoking. [DE 25, PageID# 257].

On or around January 5, 2019, Miller (a Florida resident at the time) began the process of applying to Southern Oaks and transferring his Housing Choice Voucher ("HCV") to the Georgetown Housing Authority ("GHA"). [DE 25, PageID# 257]. As part of the application process, Miller provided Southern Oaks with his proof of income, which revealed that he received disability payments. [DE 25, PageID# 257]. In March 2019, Miller traveled to Kentucky to visit the complex and view the apartment. Southern Oaks staff reiterated that the non-smoking policy was strictly enforced. [DE 25, PageID# 258].

On or around May 5, 2019, Miller arrived in Georgetown and signed a lease with Southern Oaks with a term from May 6, 2019 to May 31, 2020 ("Lease Agreement"). The first night in his new apartment, Miller smelled cigarette smoke. He quickly identified several residents with whom he shared a quadplex as routine

smokers. [DE 25, PageID# 260]. On May 16, 2019, Miller emailed Southern Oaks about the individuals he saw smoking. Elaine Hall ("Hall"),[2] his point of contact with Southern Oaks, responded she would "handle it." [DE 25, PageID# 260]. When the smoking activity did not cease, Miller contacted Hall again on or about June 4, 2019. Hall responded that she had to catch residents in the act or have proof before issuing lease violations. [DE 25, PageID# 260].

Between June 4, 2019 and August 4, 2019, Miller took a pre-planned trip out of state. Upon his return, he observed an increased number of smokers. [DE 25, PageID# 261]. He emailed Southern Oaks again on November 5, 2019, and did not receive a response. [DE 25, PageID# 261]. On Christmas Day in 2019, Miller observed a group of about 12 people leave his neighbor's apartment and openly smoke. In March 2020, Miller wrote a 13-page letter to Alco Management's corporate office, addressed to Defendants Jemison (Alco Management CEO) and Hyde (Alco Management President). [DE 25, PageID# 264]. He described the numerous lease violations he had observed, including tobacco use; and management's failure to conduct routine maintenance and provide pest control.

After receiving no response, Miller sent Jemison and Hyde another letter, this time asserting that Southern Oaks had defrauded him by representing the property as being non-smoking. Miller did not receive a response to this communication, his ten emails, nor his five voicemails. [DE 25, PageID# 264]. However, later that month,

---

[2] As discussed later, Miller represents that Hall's married name is now "White," but the Court shall continue to identify her as "Hall" for clarity. *See infra* n.6.

4

Alco Management's Regional Senior Property Manager, Defendant Stolts, sent Miller a letter explaining that the COVID-19 outbreak had led to the management problems at Southern Oaks. Following the letter, Miller made at least 30 additional complaints regarding noise and other lease violations.

In April 2020, Miller received a request dated April 1, 2020 from Southern Oaks for a social security verification letter and a bank account verification. Miller mistakenly read the letter as asking for the information to be submitted by May 1, 2020. He later realized that the letter requested the return of the information prior to May 1, 2020. On April 23, 2020, he provided Southern Oaks the requested documentation. Southern Oaks manager Defendant Gullet acknowledged receipt of the documentation but did not inform Miller of additional recertification paperwork that he needed to sign or return.[3]  [DE 25, PageID# 266].

On April 28, 2020, Miller received a notice from Southern Oaks that his lease renewal was ready for signing. At the time, Miller was quarantined with COVID-19, so he requested the renewal lease be left at his apartment. On or about May 1, 2020, Southern Oaks left a packet including the renewal lease at his front door. He was not told that the packet contained any other forms or attachments, such as

_____

[3] Although Miller does not explain what "recertification" means, the context of his allegations suggests he is referring to the U.S. Department of Housing and Urban Development ("HUD") procedure for owners who receive rent payment assistance on behalf of their tenants (such as HCVs) to annually recertify the tenant's family composition and income. *See* U.S. DEP'T OF HOUS. & URB. DEV., OFF. OF THE CHIEF HUMAN CAP. OFFICER, HUD HANDBOOK: OCCUPANCY REQUIREMENTS OF SUBSIDIZED MULTIFAMILY HOUSING PROGRAMS 7-1 (2013), https://www.hud.gov/sites/documents/43503HSGH.PDF.

recertification documents.  However, the new lease term began on May 1, 2020, which Miller noticed overlapped with his then-current lease term that ended on May 31, 2020.  [DE 25, PageID# 267].

On May 4, 2020, when calling to pay rent, Miller alerted Southern Oaks management that the new lease term overlapped with his current lease term.  [DE 25, PageID# 267].  Ultimately, Southern Oaks refused to modify the lease term or give assurances that it would act upon the lease violations Miller had reported during his residency.  Miller had planned to move out instead but learned that the GHA that they had already issued payment to Southern Oaks for June 2020.  So, Miller rescinded his vacate notice with the intention of maintaining a month-to-month tenancy as provided in his original lease.  [DE 25, PageID# 268].  On June 25, 2020, Miller received a letter from Alco Management, putting Miller on notice that he had 30 days to vacate the premises or face eviction because the lease had expired, Miller did not renew his lease, and Miller had submitted a notice to vacate.  [DE 25, PageID# 268].

### 2.    Miller's Interactions with Detective Crump

Prior to receiving a notice to vacate Southern Oaks, Miller tried to involve the Georgetown Police Department ("GPD") in his conflict with other Southern Oaks residents.  On May 7, 2020, he wrote to the GPD Chief of Police to inform him of his efforts to collect evidence that his neighbors were smoking on Southern Oaks property, that people were coming and going at all hours of the day and night, and that vehicles would park at the edge of the parking lot for short period of time before leaving.  [DE 25, PageID# 270].  On May 27, 2020, Miller received a phone call from

GPD Detective Crump, who informed Miller that his neighbors "would be watched." [DE 25, PageID# 271]. On June 30, 2020, Miller had a verbal altercation with one of the neighbors whom he suspected to be dealing drugs out of a Southern Oaks residence. Miller called GPD, and police responded and told Miller they would contact Detective Crump about the occurrence.

On July 27, 2020, the GHA denied Miller renewal of his HCV, explaining that he would not be able to renew his HCV so long as he was under investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). [DE 25, PageID# 271]. As this was the first that Miller heard of an investigation, he promptly called the ATF Lexington office and left a message regarding the information provided by the Georgetown Housing Authority. The next day, ATF Special Agent Sabrina Hager returned his call and expressly told Miller that he was not under ATF investigation but that she was assisting Detective Crump.

On August 12, 2020, Miller received a call from Detective Crump, during which he explained that Miller was under investigation for harassment of his neighbor, Defendant Judy Devers. [DE 25, PageID# 271]. Detective Crump further explained that he obtained a warrant for Miller's Southern Oaks records, and that he was also under investigation by the ATF for impersonating a federal agent. Later, Miller obtained a copy of Detective Crump's investigative report, which Miller purports detailed a number of "factual inaccuracies." [DE 25, PageID# 274].

After he was evicted Southern Oaks, Miller became homeless. In his First Amended Complaint, he alleges ten claims that defendants violated the Fair Housing

7

Act ("FHA"), his due process rights, his Fourth and Fourteenth Amendment rights, and Kentucky law.

## B.    PROCEDURAL HISTORY

Miller initiated this action on August 11, 2022.  [DE 1].  On August 16, Judge Van Tatenhove screened Miller's original [DE 1] pursuant to 28 U.S.C. § 1915(e)(2) and *sua sponte* dismissed Miller's claims without prejudice for failing to follow Federal Rule of Civil Procedure 8.  [DE 5].  Instead of re-filing his lawsuit, Miller appealed his complaint's dismissal.  [DE 6].  Ultimately, the Sixth Circuit reversed this Court and remanded his case for further proceedings.  *Miller v. Alco Mgmt., Inc.*, No. 22-5825, 2023 WL 2607458 (6th Cir. Mar. 20, 2023); *see also* [DE 9].  In its Order, Sixth Circuit elaborated on its rationale for remand:

> The district court noted that Miller's complaint spanned "dozens" of pages, identified "multiple constitutional and statutory provisions" and "numerous defendants," and contained "superfluous details."  But excessive length and verbosity do not, on their own, warrant dismissal under Rule 8. *See id.* (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998); *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132–33 (9th Cir. 2008)). This is especially so for pro se complaints, which should be "liberally construed." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *see, e.g., Garrett v. Wexford Health*, 938 F.3d 69, 92–96 (3d Cir. 2019) ("Courts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints."). Rather, the "key is whether 'the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised.'" *Kensu*, 5 F.4th at 651 (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)). Thus, a complaint that sets forth intelligible legal claims should not be dismissed under Rule 8 simply because it is too long and contains unnecessary details. *See, e.g., Watkins v. Chicago Hous. Auth.*, 527 F. App'x 504, 506 (7th Cir. 2013) (determining that a 38-page complaint was intelligible despite being "unnecessarily long and full of extraneous material on unrelated topics"); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (same as to a 26-page complaint); cf. *Garst*, 328 F.3d at 378 (affirming dismissal of a 155-page complaint with 400

8

paragraphs that were convoluted and contained unexplained acronyms and cross-references).

As these cases illustrate, the district court abused its discretion in dismissing Miller's complaint for failure to comply with Rule 8. Liberally construed, *see Jourdan*, 951 F.2d at 110, Miller's complaint sets forth discernible claims and is not so convoluted as to make the district court "'fish a gold coin from a bucket of mud' to identify the allegations really at issue." *Kensu*, 5 F.4th at 651 (quoting *Garst*, 328 F.3d at 378). Rather, despite the extraneous details, Miller's complaint tells a chronological story about his experiences at his apartment complex and his claims. . . . Although Miller's "complaint could be improved," it is still "intelligible and gives the defendants notice of the claim[s] for relief." *Bennett*, 153 F.3d at 518.

*Miller*, 2023 WL 2607458, at *1–2.

Following remand, Judge Van Tatenhove ordered the Clerk's Office and United States Marshals Service to serve a summons and a copy of Miller's Complaint upon the named defendants on April 26, 2023. Shortly after being served, all Defendants, except for Devers, filed their first round of Motions to Dismiss. [DE 20 & 21]. However, before responding, Miller filed his First Amended Complaint. [DE 25]. While Miller did not file a formal motion for leave to amend, the Court allowed Miller to proceed with his First Amended Complaint as the operative pleading in this case.[4]

---

[4] In multiple filings, Miller has opined that he filed his First Amended Complaint as a matter of course but, "for reasons still unknown," the Court treated it as an amendment filed pursuant to Fed. R. Civ. P. 15(a)(2). [DE 77, PageID# 685]; *see also* [DE 75, PageID# 827; ]. As a procedural matter, a party may file an amended complaint "21 days after serving [the original complaint]," Fed. R. Civ. P. 15(a)(1)(A), or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), **whichever is earlier**." Fed. R. Civ. P. 15(a)(1)(B) (emphasis added).

Here, Alco Defendants and the Georgetown Defendants both filed Motions to dismiss under Fed. R. Civ. P. 12(b)(6) on May 26, 2023. Miller's right to amend as matter of course expired on Friday, June 16, 2023, 21 days later. Fed. R. Civ. P. 15(a)(1)(B). Miller filed his First Amended Complaint on June 20, 2023, or 25 days

[DE 28].  Judge Van Tatenhove denied Defendants' motions to dismiss without prejudice, which prompted Alco Defendants and Georgetown Defendants to file new, but practically identical motions.  [DE 29 & 30].

Toward the close of briefing Defendants' motions to dismiss, Miller filed a Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule 15(a)(2).  [DE 65].  Miller contends that the Second Amended Complaint "would quash issues" raised by Defendants in their respective motions to dismiss.  [DE 65, PageID# 625].  After Miller's Motion for Leave to File a Second Amended Complaint was fully briefed, Miller filed a Motion for Leave to File Supplemental Complaint, [DE 77], which the Court construes as another motion for leave to file an amended complaint, rather than supplement his original complaint.[5]

Considering Miller's latest motion for leave to file an amended complaint [DE 77] leniently, the Court identifies the following substantive changes to the operative First Amended Complaint:

(1) Attaches Miller's lease with Southern Oaks as an exhibit to counter Alco Defendants' assertions that Miller had not properly pled a breach of contract claim [DE 77-3, PageID# 956–88];

(2) "[E]liminate[s] all language reflecting that Alco Management, Inc. was agent for Alco Fairfax Partners LLLP" and instead "hold Alco

_____

after the defendants filed their respective motions to dismiss.  Judge Van Tatenhove explained this in his order granting Miller leave to file his First Amended Complaint. [DE 28, PageID#|380 n.2] ("It is true that Miller filed his 'first amended complaint's . . . slightly more than 21 days after the defendants filed their motions to dismiss . . . . However, within that 21-day timeframe, Miller made it clear that he considered his original complaint to be incomplete. . . . This weighs in favor of allowing Miller's amendment.").

[5] *See infra* § III.A for discussion.

Management, Inc. liable for any and all claims arising from and/or related to" the Lease Agreement [DE 77, PageID# 871];

(3) Asserts that Alco Management fraudulently induced Miller into entering the Lease Agreement with a fictitious entity, Southern Oaks [DE 77, PageID# 871];

(4) Asserts new claims against Alco Management, including (a) fraud by omission, and (b) breach of the implied covenant of good faith and fair dealings [DE 77, PageID# 871]

(5) Adding as additional parties KY 23 SO GP Investor LLC, Elaine Nicole Hall a/k/a Elaine Nicole White,[6] and Berkeley Burbank [DE 77-2, PageID# ];

(6) Drops claims against unnamed defendants "other female managers," McLaughlin, and the City, [DE 65, PageID# 630]; *see generally* [DE 77];

(7) Adds new factual assertion that HUD rental payments were made on Miller's behalf to Alco Fairfax Partners LLLP [DE 77-2, PageID# 905]; and

(8) Clarifies FHA claim against Crump as to both timeliness and liability [DE 77-2, PageID# 949–53].

## II.   <u>LEGAL STANDARD</u>

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 U.S. Dist. LEXIS 14791, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir.1988)).  Amendments to pleadings are governed by Federal Rule of Civil Procedure 15.  Under Rule 15, a plaintiff can amend his complaint one time within 21 days of serving the original complaint or at any

---

[6] This is the same individual identified as Elaine Hall in the Factual Background section, *see supra* § I.A.1.  For clarity, the Court shall continue to refer to her as "Hall," although Miller represents that her surname is now "White."

point before the defendant answers the complaint. Fed. R. Civ. P. 15(a)(1). Rule 15 further provides that even if the party does not seek the amendment within the of-right period, the court may give leave to permit such an amendment and should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The United States Supreme Court has read Federal Rule 15 broadly and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). "This practice 'reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings.'" *Mueller v. Facilityone Techs.*, LLC, Civil Action No. 3:21-cv-759-DJH-CHL, 2023 U.S. Dist. LEXIS 76740, at *6 (W.D. Ky. Mar. 21, 2023) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (internal citation omitted)).

A proposed amendment is futile if it would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)—or, in other words, if the amended complaint fails to state a claim. *Doe v. Mich. State Univ.*, 989 F.3d 418, 424-25 (6th Cir. 2021) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003). Moreover, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). In assessing a motion to dismiss under Rule 12(b)(6), the "court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012)). A claim his facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

A complaint that merely offers "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "'naked assertion[s] devoid of further factual enhancement'" will not survive the Rule 12(b)(6) standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Relevant here, pro se pleadings are held to a "less stringent standard[]" than pleadings submitted by attorneys. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

13

# III.    ANALYSIS

Having filed the motion for leave to file an amended complaint outside of the 21-day period, Miller may not amend his complaint as a matter of right.  He may only file an amended pleading with leave the court's leave.  FED. R. CIV. P. 15(a)(2).  Miller is proceeding without an attorney, so the Court reads his pleadings liberally and "accept[s] as true all non-conclusory allegations in the complaint and determine[s] whether they state a plausible claim for relief."  *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)).

## A.    MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT ARE CONSTRUED AS MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

Miller filed two distinct motions seeking the Court's leave to file a "supplemental complaint."  The first seeks to "supplement" Miller's proposed Second Amended Complaint.  [DE 77].  The second seeks to "supplement" Miller's operative First Amended Complaint in the event the Court denies Miller leave to file his Second Amended Complaint.  [DE 87].

Supplemental complaints are ordinarily governed by Federal Rule 15(d), which provides that:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that **happened after the date of the pleading to be supplemented**.

FED. R. CIV. P. 15(d) (emphasis added).

As is evidenced in his motions, Miller misunderstands the purpose of Federal Rule 15(d).  The purpose of a supplement is to assert claims for "transactions[s],

occurrence[s], or event[s]" that **happened after** filing the complaint. FED. R. CIV. P. 15(d). Thus, to file a supplemental complaint, Miller must assert new claims that occurred after the day he filed his complaint in federal court. Neither of Miller's motions provide complaints with claims that occurred **after** the initiation of this lawsuit.

It is apparent from this Court's docket that Miller files pleading after pleading in hopes of curing perceived deficiencies or deficiencies identified by the defendants. His "supplement" resembles an amendment under the Federal Rules, so the Court shall construe both as motions to file amended complaints. *Compare Henley v. Jordan*, No. 5:20-cv-P209-BJB, 2021 U.S. Dist. LEXIS 105326, at *23 (W.D. Ky. June 4, 2021) (construing *pro se* "supplemental pleading" as a motion to amend when the filing solely "attempt[ed] to add additional facts and parties" not set forth new claims which occurred after the date of the pleading to be supplemented) *with Stephens v. Ballard*, No. 3:16CV-P493-CRS, 2018 U.S. Dist. LEXIS 249054, at *3 (W.D. Ky. Feb. 8, 2018) ("Because Plaintiff is raising allegations occurring after the filing of the complaint, the Court construes his motion to amend as a motion to supplement pursuant to Rule 15(d).").

Construing the latest filings as additional motions for leave to file amended complaints, the Court is left with three motions for leave with three different, although similar, proposed amended complaints. Each motion is conditioned on the other, in hopes that one version of his complaint will find purchase and survive defendants' motions to dismiss. The Federal Rules do not provide that a plaintiff can

have "back-up" pleadings based on how a court will rule.  A litigant must  put the best version of his or her facts forward and allow the litigation to proceed on the merits.

Upon careful review of Miller's filings, it is clear that he would prefer the Supplemental Complaint to the Second Amended Complaint [DE 77-2] to be the operative document if the Court ultimately grants his motion.   The pleading incorporates the same claims against the same parties asserted in the currently-operative First Amended Complaint, the proposed Second Amended Complaint, and the most recently filed Supplemental Complaint to First Amended Complaint, but with minor factual changes and the addition of two new claims (fraud by omission and breach of the covenant of good faith and fair dealing).  Thus, the Court is left in the odd position of having three pending and incompatible motions to replace the operative complaint with a new pleading.

Instructive here is the conventional wisdom in this Circuit that an amended pleading typically supersedes the original.  *See Hayward v. Cleveland Clinic Found.*, 759 F.3d. 601, 617 (6th Cir. 2014); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1991).  Usually this arises in the context of a motion to dismiss being mooted by the filing of an amended complaint.  But the Court sees no reason why the same logic should not apply in cases where a plaintiff has filed three proposed complaints and has implicitly expressed a desire for the one to be treated as the operative complaint in the case moving forward.  Furthermore, this approach would not prejudice Miller because his latest proposed pleading contains the most recent and thorough version

16

of his allegations and causes of actions not contained in any of the other proposed pleadings.

Because the proposed amended pleading, docketed at [DE 77-2] supersedes the others, the undersigned recommends that the Court deny the Motion for Leave to File a Second Amended Complaint [DE 65] and Motion for Leave to File Supplemental Complaint to First Amended Complaint [DE 87] as moot or, alternatively, as futile. *See* § II.D. Since the undersigned recommends that Miller's Motion for Leave to File a Second Amended Complaint [DE 65] should be denied as moot, Miller's pending motion seeking leave to file a sur-reply in support of his motion [DE 75] should also be denied as moot.

Hereinafter—and for ease—the Court shall refer to [DE 77] as Miller's "Motion for Leave to File Third Amended Complaint," and the proposed pleading [DE 77-2] shall hereinafter be referred to as the "Third Amended Complaint."

## B. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT IS FUTILE

### 1. Fraudulent Misrepresentation (Count I)

In Count I of his proposed Third Amended Complaint, Miller alleges fraudulent misrepresentation by (1) Alco Partners under the doctrine of respondeat superior for the actions of Alco Management; (2) Alco Properties and KY23 SO GP Investor LLC ("KY23") as general partners of Alco Partners; (3) Alco Management, "who, in executing the contract with Miller, failed to disclose that the alleged principal, Southern Oaks, was a nonexistent and fictitious principal"; (4) Alco Management employee Hall, who "represented . . . that the property was a non-smoking property despite knowing that it was not"; and (6) Alco Management officers Stolts, Jemison,

**17**

and Hyde, who "fraudulently represent[ed] . . . through [] contract, literature, and posted signage around the property, [that the property] was smoke-free." [DE 77-2, PageID# 930].

In Kentucky, there are six elements to a claim for fraudulent misrepresentation:

    (1) the declarant made a material misrepresentation;

    (2) the misrepresentation was false;

    (3) the false misrepresentation was made knowingly or recklessly;

    (4) the declarant induced the plaintiff to act upon the misrepresentation;

    (5) the plaintiff relied upon the misrepresentation; and

    (6) that the misrepresentation caused injury to the plaintiff.

*Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 770 (E.D. Ky. 2019) (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)). Additionally, fraud-based claims are subject to Fed. R. Civ. P. 9(b), which requires a plaintiff to: "(1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) plead when and where the statements were made; and (4) explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). Under Rule 9(b), "conditions of a person's mind may be alleged generally," but a plaintiff must plead facts that "make the state-of-mind allegation 'plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). "While it is not necessary to 'recite each minute detail,' a plaintiff is required to plead 'the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what

was obtained by the fraud.'"  *Miller v. Reminger Co.*, 2012 U.S. Dist. LEXIS 78620, 2012 WL 2050239, at *7 (W.D. Ky. June 6, 2012) (quoting *Scott v. Farmers State Bank*, 410 S.W. 2d 717, 722 (Ky. 1966))

### a.  *Material Misrepresentation*

Regarding the materiality of the representation, courts look to "whether the fact misrepresented is material to the contract," such that the party "would not, or probably would not" have entered the contract but for the misrepresentation. *Biszantz v. Thoroughbreds*, 620 F. App'x 535, 544 (6th Cir. 2015) (citing *Provident Sav. Life Assur. So v. Whayne's Admr*, 131 Ky. 84, 91, 93 S.W. 1049, 1051 (1906)). Moreover, a material representation "usually concern[s] an existing or past fact, unless the defendant falsely represents his opinion of a future happening."  *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.*, LLC, Civil Action No. 5: 11-374-DCR, 2014 U.S. Dist. LEXIS 53064, at *18 (E.D. Ky. Apr. 17, 2014).

Miller adequately pleads that Southern Oaks' non-smoking policy was material to his decision to enter into the Lease Agreement.  He avers that he asked Hall on multiple occasions whether the non-smoking policy was enforced because of his pre-existing respiratory issues that would be exacerbated by cigarette and cigar smoke.  [DE 77-2, PageID# 909–11, 941].

### b.  *Knowing or Intentional Falsity of Representation*

The second and third elements can be addressed together.  Under Kentucky law, when a party is charged with fraudulent misrepresentation, "the representations must have been not only untrue, but also made under such circumstances as would

be reasonably calculated to deceive one while exercising ordinary care for his own protection." *Norwich v. Norwich*, 459 S.W.3d 889, 899 (Ky. Ct. App. 2015) (quoting *Kreate v. Miller*, 226 Ky. 444, 11 S.W.2d 99, 102 (1928)); *Bunch v. Bertram*, 219 Ky. 848, 294 S.W. 805, 807 (1927) ("[T]he vendee must show scienter upon the part of the vendor of the falsity of his representation.").

Miller has adequately pled the falsity element, at least as to Hall. The Amended Complaint alleges that "Hall and Mclaughlin[] represented to Miller prior to his execution of the lease, that the property was a non-smoking property despite knowing that it was not." [DE 77-2, PageID# 931]. Miller has alleged that Hall had knowledge that smoking was common on the property and that the non-smoking policy was not enforced. Miller has alleged that, with such knowledge, they represented to him the opposite. Miller communicated his "need to live in a smoke-free environment" and, in response, Hall "referred to the [no smoking] signs and the lease contract and [assured] Miller that no smoking was allowed[.]" [DE 77-2, PageID# 909]. It is plausible that Hall's representations were calculated to deceive Miller who inquired about a policy material to his decision to enter into a Lease Agreement.

### c.   *Inducement to Act*

"In ordinary parlance, 'induce' means '[t]o lead on; to influence; to prevail on; to move by persuasion or influence.'" *United States v. Hansen*, 599 U.S. 762, 774, 143 S. Ct. 1932, 1942, 216 L. Ed. 2d 692 (2023) (quoting Webster's New International Dictionary 1269 (2d ed. 1953)). Accepting Miller's allegations as true, Hall made false

representations regarding the non-smoking policy, or at least its enforcement. But Miller has not pled facts that suggest she did so to induce him into entering into the Lease Agreement. He has alleged that he spoke with Hall and McLaughlin, and he expressed interest in the property. [DE 77-2, PageID# 908]. He alleges that that he posed questions about Southern Oak's non-smoking policy to Hall, which Hall answered (although falsely). [DE 77-2, PageID# 908].

Miller does not plead facts that plausibly demonstrate that Hall induced Miller to act. Absent some facts that suggest an inducement for Miller to act—in this case, to sign the Lease Agreement—his fraudulent misrepresentation claim fails as a matter of law. As a result, Miller is foreclosed from using the doctrine of respondeat superior to assign liability to any of the Alco entities, KY23, Stolts, Hyde, or Jemison. Furthermore, Miller has not pled that any other defendants made knowing, false, and material misrepresentation relating to the Lease Agreement or prospective tenancy. Accordingly, the proposed amendment as contained in Count I is futile.

### 2.  Violation of Miller's Statutory Rights Pursuant to U.S.C. Titles 24 and 42 (Count II)

The Court is perplexed by Miller's next claim, wherein he asserts that his "statutory rights" under "U.S.C. Titles 24 and 42" were violated. [DE 77-2, PageID# 932]. Miller asserts that several defendants—Alco Partners, Alco Properties, KY23, Alco Management, Stolts, Gullet, Burbank, Jemison, and Hyde—violated these rights either directly or by the doctrine of respondeat superior by refusing to provide him valid renewal lease, fraudulently stating that Miller failed to follow the procedure for recertification and refusing to participate in a hearing. [DE 77-2, PageID# 932].

21

Miller alleges that this conduct was violative of his due process rights because Alco Partners was a recipient of HAP rental payments and Low-Income Housing Tax Credit ("LIHTC").

While Miller does allege that Alco Defendants violated various statutes and regulations, and that a due process violation followed, a generous and lenient construction of his allegations does not yield cognizable claim for which this Court could provide relief. Although Miller proceeds *pro se*, he is still obligated to set forth the legal basis for his claims and facts to support them. *Twombly*, 127 S. Ct. at 1964–65. Despite this Court's duty to leniently construe *pro se* pleadings, it "cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf.") (citation and quotation marks omitted). Miller's failure to indicate a valid legal basis for this claim is, on its own, sufficient to find that the claim does not pass muster under Federal Rule 12(b)(6). Thus, the Court finds this claim to be futile.[7]

---

[7] Alco Defendants construed Miller's claim as being brought under 42 U.S.C. § 1983. While the Court does not think that Miller has properly asserted this claim under any pleading standard, the Court nonetheless finds that this claim would be futile. Miller has not stated that any of the defendants acted under color of state law when they violated the statutory provisions related lease renewal, recertification, and process for evicting a recipient of a housing voucher. None of the defendants are government entities. In no way has Miller established a nexus between a state actor and violations of the statutory provisions. Thus, the claim, as Alco Defendants have construed it, is likewise futile.

### 3. **Breach of Contract (Count III)**

Miller seeks to amend his complaint so that his lease is attached and incorporated, which he avers will cure the deficiencies identified in Alco Defendants' Motion to Dismiss with respect to his breach of contract claim as asserted in the First Amended Complaint. Miller asserts the claim against Alco Partners as a recipient of HAP payments from the GHA on Miller's behalf; Alco Properties and KY23 as general partners of Alco Partners; Alco Management, who failed to disclose the nonexistent and fictitious principal, Southern Oaks; and under the doctrine of respondeat superior for the actions of its employees; and Alco Management employees Hall, Stolts, and Gullet, Jemison, Burbank, and Hyde. [DE 77-2, PageID# 935].

Under Kentucky law, a party seeking recovery on a breach of contract claim must "show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *Strong v. Louisville & Nashville R. Co.*, 240 Ky. 781, 43 S.W.2d 11, 13 (1931). The plaintiff must establish three elements: "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Importantly, "Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal." *Summit Petroleum Corp. of Indiana v. Ingersoll–Rand Financial Corp.*, 909 F.2d 862, 868 (6th Cir.1990)(internal citations omitted)

The Lease Agreement certainly constitutes a contract relating to Miller's tenancy at Southern Oaks, providing the following:

> **PARTIES AND DWELLING UNIT:** The parties to this Lease Agreement ("Agreement") are ***ALCO Management, Inc.***, having an address, including for notices, of 35 Union Ave Ste 200, Memphis, TN. 38103 and ***as Agent for Southern Oaks***, having an address, including for notices, of 174 Fairfax Way. Georgetown, KY 40324-2047, hereinafter referred to as the "Landlord" and Ron Miller, hereinafter referred to as the "Tenant." The Landlord leases to the Tenant Apartment No. 166D (hereinafter referred to from time to time as the "Dwelling Unit"), located at 166D Fairfax Way. Georgetown, KY 40324-2047, in the property commonly known as Southern Oaks.

[DE 77-3 PageID# 956] (emphasis added).  Based on the foregoing, the Court finds that a contract did exist between Miller an entity, Southern Oaks, through its agent Alco Management.  However, he has not pled facts that plausibly show a contract existed between him and the other Alco entities, including Alco Partners, Alco Properties, or KY23.  Thus, those breach of contract claims fail on the first element as to those defendants.

Turning to the second element, whether Miller has plausibly pled a breach of contract, the Court notes that, if Southern Oaks is indeed a fictitious entity as Miller alleges, Kentucky law suggests that Alco Management becomes personally bound to the terms of the contract and any breach of that contract.  *Oliver v. Wyatt*, 418 S.W.2d 403, 406 (Ky. 1967) ("If the agent is merely purporting to be acting for a principal but is in fact acting for himself, he will be personally liable on the contract.").

Miller identifies a number of alleged breaches of the Lease Agreement:

1.  Failure to enforce smoke-free clause of the lease agreement [DE 77-2, PageID# 937–38];

2.  Failure to enforce lease terms related to late-night disturbances and quiet hours [DE 77-2, PageID# 938];

3. Failure to enforce lease terms regarding residency and tenant safety [DE 77-2, PageID# 938–39];

4. Failure to respond to complaints regarding children playing in non-designated areas during COVID-19 lockdown [DE 77-2, PageID# 939–40];

5. Failure to adhere to HUD 4350.3 guidelines regarding tenant recertification and grievance procedures [DE 77-2, PageID# 940–41]; and

6. Failure to address reported pest and maintenance issues [DE 77-2, PageID# 941–42].

Most of Miller's allegations are not lease violations. Miller avers breaches that relate to the conduct of third-parties who were, presumably, bound by their own respective lease agreements with Southern Oaks. However, the Lease Agreement does not impose any obligations on Southern Oaks to enforce *other* lease agreements. Nor does the Lease Agreement impose an obligation on Southern Oaks to guarantee a smoke-free premises, enforce residency requirements, enforce rules relating to designated play areas on the property, follow HUD grievance procedures, or address pest and maintenance issues.

For example, the lease provides that Southern Oaks is a smoke-free property. It provides that it is a violation of the Community Rules to smoke in any area of the property. It goes on to provide that violation of the smoke-free policy will result in a lease violation, three of which add up to an eviction. This provision does not impose

an obligation upon Southern Oaks to enforce the policy on Miller's, or any other tenant's, behalf.  As the conduct that Miller claims support his claims of breach were not obliged under the Lease Agreement, his grievances as pled are not plausibly actionable under the umbrella of a common law breach of contract claim asserted against Alco Management (as agent for Southern Oaks, a fictitious entity) or any other of the Alco Defendants whom he purports acted as agents for Alco Management.

As Miller's breach of contract claim as asserted in Count III of his proposed Third Amended Complaint does not pass muster under Rule 12(b)(6), the amendment is futile.

### 4.   Violations of Fair Housing Act (Counts IV, V, and VIII)

In Counts IV, V, and VIII of the Third Amended Complaint, Miller alleges two theories under the Fair Housing Act ("FHA" or "the Act").  First, he alleges that Alco Defendants (either directly or vicariously) discriminated against him, based on his gender and disabled status, "in the terms, conditions, and privileges of his rental and the services and facilities in connection with his rental" in violation of 42 U.S.C. § 3604.  [DE 77-2, PageID# 942–44 (Count IV (disparate treatment claim)); PageID# 944–46 (Count V (disparate impact claim)).  Second, he alleges that Detective Crump unlawfully "coerce[d], intimidate[d], threaten[ed] and interfere[d]" with his rights in connection to his rental in violation of 42 U.S.C. § 3617.  [DE 77-2, PageID# 946–48 (Count VIII)].

The Fair Housing Act ("FHA" or "the Act") prohibits discrimination in the sale or rental of housing because of "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604.  The Act further makes is unlawful to "coerce, intimidate,

threaten, or interfere with any person in the exercise or enjoyment of" a protected individual's sale or rental of housing. 42 U.S.C. § 3517.

As a preliminary matter, there is a question of whether Miller's FHA claims are time barred. Thus, the Court must decide whether "it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed." *Bishop v. Lucent Techs.*, Inc., 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original). The Act provides,

> An aggrieved person may commence a civil action in an appropriate United States district court or State court **not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice**, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). The statute of limitations begins to run when an aggrieved person has "actual or constructive knowledge" of the discriminatory housing practice. *Tolbert v. Ohio DOT*, 172 F.3d 934, 939 (6th Cir. 1999) (finding that claim of discrimination in the allocation of sound-mitigation measures "did not accrue until [residents] knew, or should have known, that [the Ohio Department of Transportation] was allocating such resources in a discriminatory manner") (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) ("A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.")).

### a. FHA Claims Against Alco Defendants (Counts IV and V)

Miller alleges that Alco Defendants discriminated against him while he was living in Southern Oaks, when Hall and Gullet "accept[ed] [] false accusations [of

misconduct] as true, simply because of Miller's gender  [DE 77-2, PageID# 942].  The false accusations to which he refers were lodged by female tenants.  Meanwhile, "Gullett, Hall, and Stolts[] continually and repeatedly ignored Miller's grievances about the[] twenty-five female households who were consistently violating the lease terms and provisions."  [DE 77-2, PageID# 943].  He alleges that Alco Defendants' disparate treatment, or the disparate impact as a result of its discriminatory policies, resulted in Miller continuing to live in Southern Oaks while subject to other tenants' harassment and smoking habits, depriving him enjoyment of his rental.

Miller has not pled any facts indicating that Alco Defendants engaged in a discriminatory housing practice after he vacated his apartment on July 24, 2020.  In fact, logic dictates that his right to enjoy his rental property ceased upon the termination of his residence at Southern Oaks.  Further, Miller has not pled any facts that would suggest that the FHA statute of limitations should be tolled.  Thus, as Miller filed the instant action more than two years after the termination of his tenancy, his claim against Alco Defendants is time-barred.

### b.  *FHA Claim Against Detective Crump (Count VIII)*

Miller alleges that Detective Crump coerced, intimidated, and interfered with rights by pursuing an investigation premised on Stolts' false and retaliatory accusations, violating 42 U.S.C. § 3617.  Unlike his claim against Alco Defendants, Miller alleges that he became aware of Detective Crump's discriminatory conduct on August 12, 2020, after a phone call wherein Detective Crump informed Miller he was under investigation for harassing his then-former neighbors and impersonating law

enforcement.  According to Miller, the GHA denied Miller's request to renew his HCV because of the ongoing investigation.  Setting aside whether this claim would be barred by the two-year statute of limitation, Miller's claim against Detective Crump is futile because he fails to plead a violation of 42 U.S.C § 3617.

"To prevail on a retaliation claim under § 3617, a plaintiff must show either proof of discriminatory animus or proof of disparate impact or effect." *Ali v. Louisville Metro Hous. Auth.*, No. 22-6089, 2023 U.S. App. LEXIS 30001, at *5–6 (6th Cir. Nov. 9, 2023) (citing *Linkletter v. W. & S. Fin. Grp.*, Inc., 851 F.3d 632, 640 (6th Cir. 2017)). Moreover, "[a] complaint that  includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) (*Iqbal*, 129 S. Ct. at 1950–51).

Here, Miller claims that the GHA denied his request to renew an HCV on July 27, 2020, and that the denial was based on an ongoing investigation by the ATF.  The next day, Miller contacted the ATF and was informed that the investigation was actually being led by Detective Crump and ATF was merely assisting with the investigation.  Miller spoke with Detective Crump by phone on August 12, 2020. Then, Detective Crump "informed Miller for the first time that Miller had been investigated for harassment" and that he obtained a warrant for Miller's records from Southern Oaks.  [DE 77-2, PageID# 925].

While Miller alleges that Detective Crump concocted a bogus investigation, he does not cite any discriminatory animus for doing so.  At most, Miller has pled facts

that demonstrate that his neighbors and Southern Oaks management had a discriminatory animus (based on Miller's disability and gender) and that Detective Crump initiated an investigation to "dissuad[e] Miller from any further contact" with Alco Defendants.   [DE 77-2, PageID# 952].   In addition to failing to plead a discriminatory animus by Detective Crump, Miller has also not pled facts that indicate Detective Miller initiated the investigation (whether motivated by discriminatory animus or not) in order to interfere with his receipt of his HCV.  Thus, the Court likewise does not identify a "discriminatory housing practice" that is protected under the FHA.  Accordingly, Miller's FHA retaliation claim against Miller as asserted in his Third Amended Complaint is futile.

### 5.   <u>Fraud by Omission (Count VI)</u>

Miller asserts a common law fraud by omission claim against Alco Partners as a recipient of rental payments from GHA and under the doctrine of respondeat superior for the conduct of Alco Management; Alco Properties and/or KY23 as the general partners of Alco Partners; Alco Management as entity acting on behalf of a nondisclosed and nonexistent fictious principal; and Stolts, Jemison, and Hyde, who knew or should have known Miller executed a contract with a fictitious, nonexistent principal.  [DE 77-2, PageID# 947].

Fraud by omission differs from a fraudulent representation claim and has different elements.  *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003).  "To prevail on a claim of fraud by omission, or fraud based on failure to disclose a material fact, a plaintiff must prove: a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that

fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages." *Id.* (citing *Smith v. GMC*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998)).

Miller's claim fails under these elements in several respects. First, he has not pled that Alco Management—whom Miller alleges failed to disclose that he was contracting with a nonexistent principal—actually owed him a duty to disclose whether Southern Oaks was a real entity. Second, even if he did plead such facts, he has failed to demonstrate that the true principal to the Lease Agreement was a material fact, or that Alco Management's purported misrepresentation induced him to enter into the Lease Agreement. As Miller has presented the facts in his pleading, it appears that he would have entered into the Lease Agreement regardless of who the true principal to the contract was. As discussed above, *infra* § III.B.1.a, the material fact that Miller underscores—and emphasized prior to entering the Lease Agreement—was the property's non-smoking policy. This claim, accordingly, does not pass muster under the Rule 12(b)(6) standard and is futile.

### 6.  Breach of the Implied Covenant of Good Faith and Fair Dealings (Count VII)

Miller alleges that various Alco Defendants breached an implied covenant of good faith and fair dealings. [DE 77-2, PageID# 948]. Every contract contains an implied covenant of good faith and fair dealing. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991); *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 585 (Ky. 2003). This covenant imposes on the parties to a contract "a duty to do everything necessary" to carry out the contract. *Ram Eng'g & Constr.,*

31

*Inc.*, 127 S.W.3d at 585. "Courts often interpret good faith based on the parties' reasonable expectations of the meaning of the provisions of the contract." *Id.* at 586 (citing *Corenswet Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129, 138 (5th Cir. 1979), *cert. denied*, 444 U.S. 938, 62 L. Ed. 2d 198, 100 S. Ct. 288 (1979). Although the implied covenant requires parties to do everything to carry out those contractual terms, "[a]n implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights[,]" even if those rights lead to the contract's termination. *See Farmers Bank & Trust Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (holding that plaintiff had the right to terminate loan agreement in accordance with its contractual rights). The covenant merely circumscribes a party's contractual right to terminate a contract only insofar as that party acts in "bad faith, or in an arbitrary, capricious, or unreasonable manner." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt.*, LLC, No. 5:11-CV-374-DCR, 2014 U.S. Dist. LEXIS 68981, 2014 WL 2113096, at *8 (E.D. Ky. May 20, 2014).

Taking as true that Alco Management entered into the Lease Agreement while representing that Southern Oaks (a fictitious entity) was the principal, Miller has not plausibly pled that any Alco Defendants breached the implied covenant of good faith and fair dealing for several reasons. First, he does not sufficiently demonstrate how the alleged misrepresentation by Alco Defendants directly violated the terms of the Lease Agreement or prevented Miller from receiving the benefits explicitly outlined in the Lease Agreement. If Alco Defendants acted within the bounds of their

contractual rights—despite the alleged inclusion of a fictitious principal—their actions as pled do not constitute a breach of the implied covenant of good faith and fair dealings. The Lease Agreement specifically provided that it had the option to terminate Miller's lease under certain conditions. In this case, Miller's Southern Oaks lease was terminated due to Miller's failure to complete recertification paperwork. Miller does not deny that he failed to do so. [DE 77-2, PageID# 920–21]. Thus, Miller has not plausibly pled that the termination was in bad faith, arbitrary, or capricious. The Lease Agreement had a condition by which Miller failed to abide, and provided that termination could result from failure to adhere to the condition. As Miller fails to plausibly state a claim of breach of the implied covenant of good faith and fair dealings, his claim is futile.

### 7.    Tortious Interference with Contract Against Devers (Count IX)

Finally, Miller avers that his former neighbor, Judy Devers, tortiously interfered with is Southern Oaks Lease Agreement by making false allegations calculated to "cause a breach in Miller's contract with Southern Oaks." [DE 65-1, PageID# 685]. To assert a claim of tortious interference with a contract,

> a plaintiff must show: 1) the existence of a contract; 2) defendant's knowledge of the contract; 3) defendant's intent to cause a breach of that contract; 4) that defendant's actions in fact caused a breach of the contract; 5) that plaintiff suffered damages as a result of the breach; and 6) that defendant enjoyed no privilege or justification for its conduct.

*Seeger Enterprises, Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6–7 (Ky. App. 2012)).

Here, Miller has sufficiently pled the existence of a contract—the Lease Agreement to which Miller and Alco Management (as agent for the fictitious principal Southern Oaks) was a party. Likewise, he has sufficiently pled that Devers had at least constructive knowledge of the Lease Agreement by stating that "all tenants . . . were required to be in contract with [Southern Oaks], including Devers, who therefore" was aware of Miller's Lease Agreement. [DE 77-2, PageID# 953]. Miller has also plausibly pled that Devers acted in order to create the appearance that Miller was in breach of the Lease Agreement in order to prompt his eviction. However, Miller has not plausibly pled that there was an actual breach in contract. For the reasons stated above, *supra* § III.B.3, Miller has not plausibly pled that any of the Alco Defendants were in breach of contract. Furthermore, Miller certainly has not pled facts that *he* breached the Lease Agreement—in fact, he maintains his compliance with the Lease Agreement.[8] Thus, Miller has failed to plausibly plead the elements of tortious interference with contractual relations, making his claim against Devers futile.

**8.   Conclusion**

In sum, all of the claims asserted in the Third Amended Complaint fail to state a claim upon which relief can be granted. In other words, granting Miller leave to amend his complaint would be futile and his Motion for Leave to File Third Amended Complaint [DE 77] should be denied as futile.

---

[8] With the exception of his implicit admission that he failed to complete recertification paperwork as required under the Lease Agreement. Still yet, he in no way pleads that Devers acted to prevent him from completing the recertification paperwork.

## C.   MISCELLANEOUS MOTIONS

Still pending is Miller's Motion to Strike Georgetown Defendants' Motion to Dismiss and Miller's Motion for Hearing. [DE 42].  Both motions should be denied. Miller's Motion to Strike avers that Georgetown Defendants' memorandum in support of their Motion to Dismiss [DE 30] incorporates by reference the prior iteration of their motion [DE 20], which was mooted by Miller's First Amended Complaint.  Miller contends this is an improper attempt to circumvent the page limit set forth under Local Rule 7.1(d).  [DE 42, PageID# 481].  In response, Georgetown Defendants expressed that their intention was solely to incorporate the statement of the case section from its prior motion.  [DE 51, PageID# 558].  Miller did not reply. Incorporating only the statement of the case section only would keep the motion within the 25-page limit set by the Local Rules.  Thus, the Court should deny Miller's Motion to Strike [DE 42].

Miller's Motion for Hearing [DE 41 & 42] should also be denied.  Although a party may request a hearing or oral argument related to a motion, response, or reply, the Court need not grant that request.  LR 7.1(f).  The undersigned has thoroughly reviewed the pleadings and all of the conventionally filed videos, audio recordings, and documents and has a thorough understanding of Miller's claims and defendants' arguments for why they should be dismissed.  Finding no hearing necessary, the Court should likewise deny Miller's Motion for Hearing [DE 41 & 42].

## D.   MOTIONS TO DISMISS

The defendants' motions to dismiss rely on Federal Rule 12(b)(6) and ask this Court to dismiss the operative First Amended Complaint.  [DE 29 & 30].

Preliminarily, the Court notes that Federal Rule 12, as with all the federal rules, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In this case, where all parties have engaged in thorough motion practice, Court remains resolved to adjudicate this matter on the merits—not based on some alleged animus or bias toward any party. The parties are obliged to do the same and should, therefore, refrain from casting baseless aspersions on opposing counsel or this Court.[9]

Turning to merits, all of the claims asserted in the First Amended Complaint are substantively identical to claims claims asserted in the proposed Third Amended Complaint and discussed above, *infra* III.B. Accordingly, the Court should grant Defendants' motion as to the following claims in the First Amended Complaint: Count I (mirroring Count I of Third Amended Complaint),[10] Count II (mirroring

---

[9] Miller has several times alluded to the Court's alleged bias toward one of Alco Defendants' attorneys due to her former employment with the Court. [DE 56, PageID# 581–82; DE 71, PageID# 813; DE 72, PageID# 817; DE 76, PageID# 840 n.2; DE 86, PageID# 1076]. His only evidence of such bias is that this Court has issued rulings he deems adverse. In any event, litigants are obliged "to show appropriate courtesy and respect to opposing counsel." *Gueye v. U.C. Health*, No. 1:13-cv-673, 2014 U.S. Dist. LEXIS 141834, at *5 (S.D. Ohio Oct. 6, 2014). Litigants are "**not** entitled to make unfounded ad hominem attacks on opposing counsel." *Id.* (emphasis added) (citing *McKenna v. Nestle Purina PetCare Co.*, No. C2-05-976, 2011 U.S. Dist. LEXIS 2579, at *4 (S.D. Ohio Jan. 3, 2011)). The Court cautions Miller that continued baseless accusations will not be tolerated.

[10] Count I of Miller's Third Amended Complaint does not assert a fraudulent misrepresentation claim against Alco Management employee McLaughlin. *Compare* [DE 65-1, PageID# 664–66] *with* [DE 77-2, PageID# 930–32]. To the extent that Miller still seeks to pursue the fraudulent misrepresentation claim against McLaughlin under his First Amended Complaint, the Court recommends that the

Count II of Third Amended Complaint), Count IV (mirroring Count III of Third Amended Complaint), Count VI (mirroring Count IV of Third Amended Complaint), Count VII (mirroring Count V of Third Amended Complaint), Count VIII (mirroring Count VII of Third Amended Complaint), and Count X (mirroring Count IX of Third Amended Complaint).

The Court should also grant defendants' motions as to Count IX of the First Amended Complaint (*Monell* claim pursuant to 42 U.S.C. § 1983 against City of Georgetown) because Miller subsequently stated that he "believes it futile to pursue any claims against the City due to lapse in statute."  [DE 65, PageID# 630]. This leaves no more remaining claims, meaning that the Court should grant the Motions to Dismiss [DE 29 & 30] in full and dismiss the First Amended Complaint.

## IV.   RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that:

(1) Miller's Motion for Leave to File Second Amended Complaint [DE 65] be **DENIED AS MOOT**, as superseded by Miller's Motion for Leave to File Third Amended Complaint [DE 77];

(2) Miller's Motion for Leave to File Sur-Reply [DE 75] be **DENIED AS MOOT**;

---

Court likewise dismiss the claim as to McLaughlin.  As with Hall, Miller fails to plead that McLaughlin induced Miller to enter into the Lease Agreement and, therefore, the claim fails as a matter of law.  See *supra* § III.B.1 for discussion of elements of fraudulent misrepresentation claim.

(3) Miller's Motion for Leave to File Supplemental Complaint to First Amended Complaint [DE 87] be **DENIED AS MOOT**, as superseded by Miller's Motion for Leave to File Third Amended Complaint [DE 77];

(4) Miller's Motion for Leave to File Third Amended Complaint [DE 77] be **DENIED AS FUTILE**;

(5) Miller's Motion for Hearing [DE 41 & 42] be **DENIED**;

(6) Miller's Motion to Strike [DE 42] be **DENIED**;

(7) Alco Defendants' Motion to Dismiss [DE 29] be **GRANTED**; and

(8) Georgetown Defendants' Motion to Dismiss [DE 30] be **GRANTED**.

*Right to Object*

The Court issues this Recommended Disposition under Federal Rule of Civil Procedure 72(b)(1) and 28 U.S.C. § 636(b)(1)(B). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make timely objections consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466, 468 (1985).

Entered this 21st of February, 2024.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY